In re Mark TARLE, Debtor.

Frank STRIFFLER, Plaintiff,

v.

Mark TARLE, Defendant.

Bankruptcy No. 85–1407.
Adv. No. 85–0496.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 9, 1988.

Victor H. Pribanic, McKeesport, Pa., for plaintiff.

Jan Ira Medoff, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before this Court is Plaintiff's objection to the Debtor's discharge, wherein he avers that the Debtor (1) concealed and transferred property within one year of filing bankruptcy in order to hinder, delay or defraud creditors; and (2) knowingly and fraudulently made a false oath. Based upon the pleadings and testimony at trial, the Court determines that the Debtor

will be denied a discharge under 11 U.S.C. §§ 727(a)(2)(A) and (4)(A).

## FACTS

On April 30, 1985, Plaintiff obtained a judgment against the Debtor in the amount of $12,500. Less than two months later, on June 24, 1985, the Debtor filed a Chapter 7 "no asset" bankruptcy petition. At the first meeting of creditors, on August 15, 1985, Plaintiff questioned the omission of certain items from Debtor's petition, i.e. a 1973 truck and tools used in Debtor's business. At trial, the Plaintiff testified that he had first-hand knowledge of Debtor's truck and tools, as a result of their business relationship.

Debtor owns an auto repair business in which he repairs and "customizes" vehicles. Debtor testified that the truck was not just a means of transportation, but was also a "trophy" which he displayed in car/truck shows, and which he used for advertising his business. Debtor claims no hard and fast value could be put on this truck, considering the modifications he had made, *inter alia* a "chop top", electric doors and painted mural, in large part because he believed that no buyer would be willing to pay a price which would even reimburse the cost of his time in this labor of love.

Plaintiff filed Objections to Discharge on October 15, 1985, due to Debtor's failure to list all assets. Thereafter, Debtor amended his petition to add this special 1973 truck at a value of $3,500 and the tools of his trade at a value of $639.[1] Though not required, an Order permitting the amendment to be filed was requested and entered by the court on January 7, 1986. A second amendment was filed on June 2, 1986, which listed a purchase money security interest in Debtor's tools in the amount of $1,246.26. Debtor has since reaffirmed said debt.

The credible testimony has established to the satisfaction of the Court that the value of the truck was at least $10,000. Debtor testified there had been an oral offer of $8,000, but same was not formalized. After considerable explanation by the Debtor at trial concerning the value of the truck, he acknowledged that it was "probably worth around $10,000". This valuation was based on Debtor's assertion that it would cost him $10,000 to purchase a comparable truck to use in his business, and did not take into consideration the various modifications he had performed to transform the vehicle into a show piece. An expert witness for the Plaintiff testified as to the number of hours it would have taken to complete the Debtor's modifications and also as to the general labor rate for such services. This witness had had substantial opportunity to closely observe the truck on numerous occasions and testified that the cost of the modifications alone would be approximately $10,000. Furthermore, at trial, Plaintiff testified that he had offered to take the 1973 truck in satisfaction of the $12,500 judgment.[2] However, Debtor refused and replied that the truck was worth more than he owed Plaintiff.

## ANALYSIS

■ Objections to discharge in bankruptcy are to be strictly construed against the objector to further the policy of affording the debtor an effective fresh start. *In re Goldstein*, 66 B.R. 909, 917 (Bankr.W.D.Pa. 1986). As stated in *Matter of Brooks*, 58 B.R. 462, 464 (Bankr.W.D.Pa.1986), "Section 727 of the Bankruptcy Code is the core of the fresh start provision in bankruptcy law, permitting the *honest* debtor to receive a new start in life free of the manacles of debt." (Emphasis added). After considering the surrounding facts, this Court must determine whether the Debtor has "violated the spirit of the bankruptcy

---

1. Both assets were listed as exempt under 11 U.S.C. § 522(d) on the Amended Petition. The truck was listed under 522(d)(1) and (5) and the tools were listed under 522(d)(6). The original petition showed the Debtor as claiming his state exemptions under 522(b)(2). The court approved the Amended Petition which changed his claim to federal exemptions under 522(d).

2. It was not clear at trial whether these discussions took place before or after the $12,500 judgment was obtained. They did occur after Plaintiff's suit was filed.

laws and should therefore be denied the privilege of eliminating the legal obligation of his debts." *In re Roberts*, 81 B.R. 354, 378–79, (Bankr.W.D.Pa.1987).

Sec. 727(a)(2) is set out below:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition

Under Rule 4005, the Plaintiff has the burden of proving his objection. *Matter of Brooks, supra*, at 464; *In re Gordley*, 38 B.R. 630, 631 (Bankr.S.D.Ohio 1984). Plaintiff must prove four elements: (1) debtor transferred or concealed property; (2) the property belonged to the debtor; (3) the transfer or concealment occurred within one year of the filing of the petition; and, (4) the debtor intended to hinder, delay or defraud a creditor. *In re Goldstein*, 66 B.R. 909, 917 (Bankr.W.D.Pa.1986); *Matter of Brooks, supra* at 465.

█ Under § 727(a)(2), intent to hinder or delay is sufficient for the court to sustain objections to discharge.[3] Intent is difficult to demonstrate; therefore, circumstantial evidence may be used to establish a pattern of concealment and nondisclosure. *In re Ingle*, 70 B.R. 979, 983 (Bankr.E.D.N.C.1987); *see also, Matter of Brooks, supra* at 465. In the case at bar, the Plaintiff alleged that the Debtor *transferred* and *concealed* property.

Evidence adduced at trial showed that the truck was not transferred by the Debtor within the one year period prior to the filing of the bankruptcy petition. The only transfer that occurred was from the Debtor's mother to the Debtor and his wife.

█ Did the Debtor *conceal* his assets? Conduct of concealment consists of "placing assets beyond the reach of creditors or withholding knowledge thereof by failure or refusal to divulge owed information." 4 Collier on Bankruptcy, Section 727.02, 727–27, (15th Ed).

The Debtor claimed he failed to include the 1973 truck because it was in his and his wife's names and not in his name alone. The fact that the truck was in both names does not provide vindication. A debtor must list all assets, even those held by the entireties. Thereafter, if appropriate, certain assets may be exempted; however, it is not his decision whether or not to include it. *In re Ingle, supra* at 983; *In re Chambers*, 36 B.R. 791, 793 (Bankr.W.D.Ky. 1984). "It is the Debtor's role simply to consider the question carefully and answer it completely and accurately ... [T]he duty is on the Debtor to answer, and not evaluate." *In re Diodati*, 9 B.R. 804, 808 (Bankr.D.Mass.1981).

Debtor also omitted his tools from the original petition, without explanation. The Debtor entered into a security agreement on January 4, 1984, for said tools in the amount of $2,858.10. Weekly payments of $21.98 have been made. After filing for bankruptcy, Debtor signed a reaffirmation in which he agreed to pay the remainder of the debt. This agreement was submitted for approval to this Court on June 6, 1986. These tools were an integral part of his business. The Debtor could not have omitted listing this asset by mistake or inadvertence.

Debtor amended his schedules to include the 1973 truck and the tools. This Court is not convinced that the amendment served to negate the prior concealment. In *Ingle, supra* at 984, no explanation was given as to why certain items were omitted from the petition. The Court held that "[t]he fact that the property in question is included in the debtor's amended petition does not ex-

---

**3.** Since the language is disjunctive, there is no requirement for intent to be fraudulent as there is in (a)(4). *In re Perlmutter*, 256 F. 862, 869 (D.N.J.1919), *aff'd sub nom, Perlmutter v. Hud-* speth, 264 F. 957 (3d Cir.1920); *In re Rowe,* 234 F.Supp. 114, 116 (E.D.N.Y.1964); *In re Cycle Accounting Services,* 43 B.R. 264 (Bankr.E.D. Tenn.1984).

cuse its original omission." *Id.* The schedules in the case at bar were not amended until *after* Objections to Discharge were filed by the Plaintiff. This precludes any "good faith" effort by Debtor. The Debtor was forced to add the two assets to his petition.

Compounding the original impropriety, on the amended petition, Debtor withheld information as to the true value of these assets. We are convinced that given the "big picture" of the Debtor's actions, he concealed property with the intent to hinder, delay, or defraud a creditor of the estate.

■ Plaintiff has also objected to discharge of the Debtor under Section 727(a)(4)(A) which states:

(4) the Debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account

■ Plaintiff has the burden of showing two elements concerning the oath made by the Debtor: that the oath was (1) knowingly and fraudulently made; and (2) related to a material fact. *Matter of Brooks, supra* at 467. A false oath may be enough to sustain a denial of discharge when: (1) the false statement or omission occurs in the Debtor's schedules;[4] or (2) the false statement was made by the Debtor at an examination during the course of the proceedings. 4 Collier on Bankruptcy, 727.04, 727–59, (15th Ed).

> [T]he purpose of 727(a)(4)(A) is to insure that Debtors provide all of the necessary information upon which anyone with reason to know can rely.... Additionally, the materiality of the false oath or account does not require that any of the creditors were prejudiced by the false statement. Rather, the question of ma-

teriality goes to the issue of the pertinence to the discovery of assets and/or past transactions.

*Matter of Brooks, supra* at 467.[5]

The valuation of the 1973 truck goes to the question of "materiality of the false oath". The subject matter of a false oath is material if it relates to the "bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984); *see also, In re Steiker,* 380 F.2d 765, 768 (3d.Cir.1967). The Debtor placed a value of $3,500 on the truck. This is within the amount allowed by federal exemptions. The Debtor claimed the truck as an exemption under §§ 522(d)(1) and (5). Debtor's total claimed assets under §§ 522(d) (1) and (5) including *inter alia*, a canoe and paints are $4,050.00. The maximum allowed exemption is $4,150.00. If the Debtor had valued the truck at any more than $100 above its stated value, an asset would have been created for the creditors. Evidence at trial showed that the 1973 truck was worth $10,000. By stating the truck was worth $3,500, the Debtor was guilty of making a false oath.

Debtor was questioned regarding the omission of the tools at the first meeting of creditors. Debtor did not add the tools to an amended petition until after Plaintiff filed objections to discharge. He then listed the tools within his exemptions at $639.[6] Debtor's actions regarding the tools are inconsistent, in that, he signed a security agreement for said tools in the amount of $2,858.10. After filing bankruptcy, these tools became the subject of a reaffirmation agreement in the amount of $1,246.26. The $639 figure used on the amended petition is substantially lower than either the

---

**4.** A Debtor's schedule of assets and liabilities is accompanied by the Debtor's statement that the schedule is "true and correct to the best of my knowledge and belief." Signing this statement without full disclosure of assets can be enough for Debtor to be guilty of a false oath.

**5.** In his brief, the Debtor refers to *In re Woerner,* 66 B.R. 964 (Bankr.E.D.Pa.1986), in several instances. In *Woerner,* the Debtor "neglected" to list several assets on his original petition.

That case can be distinguished from the case at bar on the grounds that the omissions in *Woerner* were found not to be material to the assets of the Debtor. That court also found the explanations of the Debtor to be credible, and therefore, no intent to defraud was proved under (a) (4). *Woerner* at 975.

**6.** Under § 522(d)(6) the exemption ceiling for tools of the trade is $750.

amount in the security agreement or the amount which was reaffirmed.

The 1973 truck and the tools may not be large omissions separately. Courts have found that "lesser, although deliberate, omissions", which by themselves would not sustain objections to discharge, *In re Hirsch,* 14 B.R. 59, 61 (Bankr.S.D.Fla. 1981), will show a pattern of reckless indifference to the truth sufficient to deny discharge. *In re Ingle, supra,* at 983. The truck in question was Debtor's "trophy" and the omitted tools were Debtor's livelihood. Failure to schedule these assets was clearly not a mere oversight. To the contrary, this omission was at best a reckless indifference to the truth or at worst a fraudulent statement. In either event this activity cannot be condoned and discharge must be denied.

In summation, Debtor failed to disclose two of his primary assets on his original petition. After Objections to Discharge were filed by the Plaintiff, the schedules were amended using values that permitted these two items to remain within the limits of the federal exemptions and permitted Debtor to retain same unopposed. Evidence at trial showed that these assets, when finally listed on the amended schedules, were substantially undervalued. Actions by this individual are not those of a Debtor who "provide[s] honest answers and actions." *Matter of Brooks, supra* at 468. We, therefore, deny the Debtor a discharge under 11 U.S.C. §§ 727(a)(2)(A) and727(a)(4)(A).

Debtor's counsel has requested attorney's fees under § 523(d) of the Bankruptcy Code. "Subsection (d) of § 523 requires the court, in certain circumstances, to award costs and reasonable attorney's fees to the debtor *if* the debtor *prevails* in a dischargeability complaint involving a consumer debt." (Emphasis added). *In re Smith,* 54 B.R. 299, 303 (Bankr.S.D.Iowa 1985); *see also,* 4 Collier on Bankruptcy, § 523–13, 523–72.1 (15th Ed.). Attorney fees are awarded to counsel to the debtor only if the Order to Discharge is not sustained. Here the Order to Discharge was sustained. Therefore, counsel's request for fees will be denied.

An appropriate Order will be issued.